WILBUR HUBBARD *v.* STANLEY WHITHAM.

[No. 771A132. Filed February 29, 1972. Rehearing denied April 4, 1972.]

*Douglas C. Leatherbury,* of Vevay, for appellant.

*Henry A. Pictor, Pictor and Mitchell,* of Rising Sun, for appellee.

LOWDERMILK, J.—This is an action for specific performance brought by the plaintiff-appellee to require defendant-appellant to convey to him a certain farm in Ohio County, Indiana, which the plaintiff-appellee had purchased at public auction for $20,000. At the time of the sale defendant-appellant was married and the farm was owned by him and his wife as tenants by the entireties. However, at that time there was an action pending between them for divorce from bed and board. In the divorce proceeding the parties stipulated the farm was to be set over to defendant-appellant as his separate property and the same was done, leaving Wilbur Hubbard as the sole defendant-appellant in this action.

The real estate was sold at public auction with a specific reservation made known in the sale bill and also made known to all people at the sale by the auctioneer before the farm was sold that the sellers had the right to reject any and all bids.

The sale bill which had been distributed generously in the area of the farm provided the terms—"Cash on personal property; terms on real estate—10% down on day of sale, balance with deed within 30 days after date, with the right to reject any and all bids. Possession with deed."

Plaintiff-appellee was the high bidder at the auction and made a $2,000 down payment by his personal check which was accepted by the sale cashier and the sale clerk made the notation on her record of the sale as follows: "Farm—Twenty thousand dollars—Dick Whitham." The record discloses that is all of the record made in writing by the sale clerk showing the sale to Mr. Whitham.

After plaintiff-appellee tendered the cashier his check defendant-appellant, through his attorney, Mr. Leatherbury, told the cash clerk and the plaintiff-appellee that the bid had been rejected and the cash clerk attempted to return the down payment, which was refused, and then defendant-appellant's attorney attempted to return the down payment which was refused, and later mailed it to plaintiff- appellee.

The complaint for specific performance alleged that on March 22, 1969, the defendants were owners in fee of the real estate here in question, together with a description thereof; that on March 22, 1969, plaintiff purchased the described real estate from the defendants at public auction for $20,000 as bid by plaintiff pursuant to the notice by sale bill, a copy of which was made a part of the complaint and shows that the terms of the sale of the real estate was 10% paid on day of sale, balance with deed within 30 days of date, with a right to reject any and all bids. Possession with deed.

The bid price of $20,000 was made by the plaintiff and there were no further bids; defendants agreed to sell the farm at the $20,000 figure and failed to reject said bid when they had the opportunity to do so in accordance with local custom regarding such auction sale.

The sale was written up by Sharon Walton, clerk for said auction on behalf of the defendants.

Plaintiff paid 10% of the purchase price, namely, $2,000 to Mr. James Lemmon, cashier for the auction on behalf of defendants.

Plaintiff further alleges compliance with the terms of the sale in that he further sent by certified mail to defendants on April 17, 1969, a certified check in the amount of $6,000 and a building and loan commitment for a mortgage loan of $12,000.

That at all times mentioned in the complaint up to and including the date thereof defendants retained possession of the real estate and had failed and refused to execute the deed to plaintiff for said real estate, though often requested so to do; that the subject of this sale is real estate which cannot be duplicated elsewhere.

The plaintiff deposited with the complaint his check in the amount of $2,000 which had been returned by the defendants, his certified check in the amount of $6,000 and his building and loan commitment in the amount of $12,000, and prayed that defendants be compelled to execute to the plaintiff a good and sufficient deed to said real estate and that a commissioner be appointed to make such conveyance.

To the complaint a demurrer was timely filed, alleging the complaint did not state facts sufficient to constitute a cause of action, with a memorandum affixed thereto which stated that the complaint did not state there was any written contract signed directly or indirectly by the defendants; there are no allegations in the complaint that there was ever a written memorandum setting forth the terms and conditions of the sale and signed by the defendants or their authorized agent and as a matter of fact there was no such written contract. The memorandum further sets out § 33-101, Burns Statutes.

The demurrer was overruled and the defendants were ruled to answer, which they did in two paragraphs.

This cause was heard by the court without the intervention of a jury and the court granted plaintiff-appellee a judgment for specific performance on October 23, 1970. A corrected judgment was duly entered by the court on November 13, 1970, which ordered execution and delivery to plaintiff of a good and sufficient deed conveying fee simple title to the land described in the complaint.

Defendant Hubbard timely filed his motion to correct errors, of which there were six specifications of alleged error.

This court has explored all known possibilities of sustaining the trial court, as that is this court's duty where it is possible to do so. However, under TR. 59 (A) (5), which is specification 3 of the motion to correct errors, the defendant-appellant Hubbard has stated:

"(3) TR. 59 (A) (5)—Uncorrected error of law occurring and properly raised in the proceedings prior to trial:

"Defendants properly demurred to Plaintiff's complaint on the basis that said complaint did not state that there was any written contract signed directly or indirectly, by Defendants for the sale of the real estate, and in fact there was no such written contract. Section 33-101 of the Indiana Statutes provides that no action shall be brought on any contract for the sale of lands unless the promise, contract or agreement upon which such action shall be brought, or some memorandum or note thereof shall be in writing, signed by the party to be charged therewith, or by some person theretofore by him lawfully authorized to sign same."

This court having concluded that the trial court erred in overruling the demurrer to plaintiff's complaint for the reasons assigned will not write on any other specifications, as it is only necessary for us to pass upon the one point where it is determined that the trial court committed reversible error and this court is not required to discuss other points in question in a given case. *Selner* v. *Fromm* (1969), 145 Ind. App. 378, 251 N. E. 2d 127; *Bd. of Comm. of Co. of Vanderburgh* v. *Flowers* (1964), 136 Ind.

App. 597, 201 N. E. 2d 571; *Finney* v. *L. S. Ayres & Co.* (1965), 137 Ind. App. 430, 207 N. E. 2d 642.

Appellant Hubbard cites the case of *Sachs* v. *Blewett* (1933), 206 Ind. 151, which we have carefully read and which, in our opinion, we need not discuss in view of our own research. He also cited the case of *Norris* v. *Blair, Administrator* (1872), 39 Ind. 91, which case is by the administrator of an estate to recover for the sale of wheat sold at public auction during the principle's lifetime. We are interested in the law on the sale of real estate at public auction, but quote from this case with great interest as follows:

> ". . . It is admitted by both parties, *and we so hold, that auction sales are within the statute of frauds, and that the auctioneer and clerk are the agents of both parties.*"

The court further said:

> " '. . . Unless the essential terms of the sale can be ascertained from the writing itself, or by a reference contained in it to something else, the writing is not a compliance with the statute; and if the agreement be thus defective, it cannot be supplied by parol proof, for that would at once introduce all the mischiefs which the statute of frauds and perjuries was intended to prevent.' "

The *Norris* case quotes from the text of Browne on the Statute of Frauds, sec. 382, wherein he says:

> " 'In cases of sales, the credit stipulated is an essential term of the contract, and must appear in the memorandum.' . . . 'As to the question what the written agreement must contain, the general answer is, all that belongs essentially to the agreement, and more than this is not needed; nor can parol evidence be received to supply anything which is wanting in the writing, to make it the written agreement on which the parties rely.' "

In *Norris,* in the memorandum the terms and conditions of the sale were not set out. Nothing was said of the nine months credit, the note and security, nor waiving valuation

and appraisement laws, which, in view of the above cited authorities was required, nor is any reference made to the poster or notice of sale, and it could not be used as a part of the memorandum. The demurrer for want of sufficient facts should have been sustained.

I.L.E., Vol. 14, ch. 6, p. 263, § 57, under the title of *Frauds, Statute of,* states that the memorandum required by the statute of frauds must show all the essential terms and conditions of the contract and further quotes from the case of *Wertheimer* v. *Klinger Mills* (1940), 216 Ind. 481, 25 N. E. 2d 246:

> "A contract in writing which leaves some essential term thereof to be shown by parol is only a parol contract and is, therefore, not enforceable."

The case of *Block* v. *Sherman* (1941), 109 Ind. App. 330, 34 N. E. 2nd, 951, is a suit for specific performance for an agreement for the sale of real estate. The trial court sustained the demurrer of appellees to the second amended complaint and supplemental complaint of appellant. Appellant refused to plead further and appealed from the resultant judgment.

The court set out the material facts essential for the determination of the questions raised in the complaint and supplemental complaint, which are as follows:

> "That on the 29th day of November, 1939, and for a long time prior thereto, the defendant, Augusta J. Sherman, was the owner in fee simple of the real estate known and described as lot No. 92 as shown on the recorded Plat of Harter Heights First Addition to the City of South Bend; also the west one-half (½) of lot No. 91 as shown on the recorded Plat of Harter Heights Second Addition to the City of South Bend, Indiana, which said parcels formed one single building lot designated and carried on the records of the City Engineer of the City of South Bend, Indiana, as and commonly known in said city as 1304 Leeper Avenue, South Bend, Indiana.
> 
> "That on said date, the defendant, Augusta J. Sherman, entered into an agreement with the plaintiff for the sale

of said real estate and gave to said plaintiff a memorandum in her own handwriting of said agreement in the following words and figures, to-wit:

'Purchase    13500  Purchase Price
           500  Paid on acc.
    —————
    13000  Bal.

Taxes to be assumed—133.98 twice a year
   May and November
1000 tax exemption to be made by May
   1st Monday—
Bal. to be paid cash—upon the delivery of Deed and Abstract brought up to date 267.96'

"That by the terms of said agreement and the memorandum thereof, the defendant, Augusta J. Sherman, offered to sell said real estate for the sum of thirteen thousand five hundred ($13,500.00) dollars of which said sum of five hundred ($500.00) dollars was to be paid on the 29th of November 1939; that the plaintiff was to assume taxes due in the amount of one hundred thirty-three and 98/100 ($133.98) payable twice a year, and the balance of the purchase price was to be paid in cash upon the delivery of the deed and the abstract brought up to date. That plaintiff duly accepted all the terms of said agreement and the memorandum thereof.

"That thereupon the plaintiff gave to the said Augusta J. Sherman his check in the sum of five hundred ($500.00) dollars which was duly accepted by said defendant and a memorandum in writing of said payment and signed by the said Augusta J. Sherman was given to the plaintiff by her, same being in the following words and figures, to wit:

'Nov. 29, 1939

'Received of Saul Block—$500.00 to apply on purchase price of $13,500 for property located at 1304 Leeper Avenue, South Bend, Indiana.

'(signed) Augusta J. Sherman'

"That as in said memorandum used the words and figures '1304 Leeper Avenue, South Bend, Indiana' was understood by said parties as referring to and embracing the real estate hereinabove described.

"That said above mentioned memoranda were both given to the plaintiff by the defendant at the same time and

simultaneously upon her receiving the said check for five hundred ($500.00) dollars.

"Plaintiff further alleges that on the 30th day of November, 1939, the said defendant gave notice of recission of said agreement to the plaintiff by registered mail, said notice being in the following words, to wit:

'First Bank and Trust Company
of South Bend
South Bend, Indiana

'Dear Mr. Block: Am returning your check to you as Mr. Brown feels that I am morally obligated to let him have the place. Very sorry about it all.

Very Resp. Augusta J. Sherman'

"That upon receipt of said notice, plaintiff immediately notified the said defendant, Augusta J. Sherman, that he insisted upon her compliance with said agreement and that he rejected her recission of said agreement. . . ."

The pleadings further alleged facts showing plaintiff was ready, willing and able at all times to perform the terms of the contract by him to be performed, that he notified the defendants of his agreement for the purchase of real estate and filed a *lis pendens* notice with the clerk of the court where the complaint was filed and that thereafter the defendant Augusta J. Sherman conveyed the real estate to the defendants Samuel Brown and Anna Fae Brown.

The prayer of the complaint asked that the defendants be required to execute a deed to the described real estate upon payment of the sum of $13,500 by the plaintiff and payment of taxes on such real estate, and that a commissioner be appointed, if necessary, to make said conveyance.

This court held that the questions for determination grew out of the statute of frauds, citing § 33-101 Burns (1933), as follows:

"1. Can the unsigned and undated written memorandum, set forth in the complaint, be considered with the signed receipt dated November 29, 1939, in order to make an enforceable contract within the terms of the statute?

"2. If the unsigned and undated memorandum cannot be so considered, is the signed and dated receipt, within itself, a sufficient memorandum to make enforceable a contract within the statute?"

The statute of frauds provides no action shall be brought in any of the following cases, of which the one applicable to the case is the fourth, and reads as follows:

"Fourth. Upon any contract for the sale of lands

* * * Unless the promise, contract or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized, excepting however, leases not exceeding the term of three (3) years."

The writing judge of this court, in a well reasoned and well considered opinion, stated:

"It is well established that the memorandum may consist of several writings, if each writing is signed by the party to be charged and the writings indicate that they relate to the same transaction. [Citing cases.] "It is also well established that a memorandum may consist of several writings though one writing only is signed, if the signed writing is annexed to the other writings by the party to be charged, or the signed writing refers to the unsigned writing so as to make it a part of the instrument which refers to it."

The author of *Block* v. *Sherman* further quoted from Pomeroy's Specific Performance of Contracts, 3 ed. (1926), § 90, p. 217, discussing the matter of the memorandum as well as the text in Browne on the Statute of Frauds, 5 ed., § 346b, p. 470.

In *Ridgway* v. *Ingram* (1875), 50 Ind. 145, 147, the court in discussing the sufficiency of a memorandum of a contract that was within the statute of frauds, said:

". . . It seems to be well settled, that a memorandum, in order to make another writing a part thereof, so as to constitute a part of the contract, must refer to such other

writing; and that parol proof of the connection of the papers is not admissible to establish a contract required by the statute of frauds to be in writing."

In *Feichter* v. *Korn* (1919), 70 Ind. App. 205, 210, 123 N. E. 355, the court said:

"Appellant insists that the exhibits to the complaint taken together constitute the contract, the specific performance of which he seeks in his action. There is no reference whatever in any one of these instruments to either of the others, and without such references, under the statute of frauds which requires that all contracts for the sale of real estate shall be in writing, they cannot be construed together as constituting the contract, for extrinsic evidence cannot be heard to show their relation each to the others. The evidence of the relation must be within the instruments themselves. Many authorities sustain this principle, among which we cite *Graham* v. *Henderson Elevator Co.* (1916), 60 Ind. App. 697, 111 N. E. 332, which contains a full discussion of the question, and cites numerous authorities."

The court, in the *Block* case, *supra*, further said:

"The signed receipt and the unsigned memorandum, which are set forth in appellant's complaint, are not alleged to have been physically attached by the appellee Augusta J. Sherman so as to evidence her intention that they be considered as one instrument. Where we have a signed instrument and an unsigned one, the connection between the two instruments must appear by internal evidence derived from the signed instrument. This connection cannot be shown by parol evidence concerning the intentions or actions of the parties. The signed instrument must so clearly and definitely refer to the unsigned one that, by force of the reference, the unsigned one becomes a part of the signed instrument."

The court further held that there was no reference in the signed receipt to the memorandum which appellant claimed was made by Augusta J. Sherman in her own handwriting and given to appellant. The fact that the two instruments were made by the appellee in her own handwriting; that both were delivered to the appellant by her on the same date

and that both recite a purchase price of $13,500 and a payment of $500 would not be sufficient to make the unsigned document a part of the signed document. The court, speaking further, said:

". . . Despite the identity of handwriting, date of delivery, and amount of purchase price, it would be necessary to resort to parol testimony to show the connection between the two papers."

In *Block* the court held that the unsigned and undated memorandum set forth in appellant's complaint cannot be considered with the signed and dated receipt in order to make an enforceable contract within the statute of frauds. This court, in *Block,* quoted the American Law Institute, Restatement of the Law of Contracts, § 207, p. 278, which lays down the following rule for testing the sufficiency of a memorandum:

" 'A memorandum, in order to make enforceable a contract within the Statute, may be any document or writing, formal or informal, signed by the party to be charged or by his agent actually or apparently authorized thereunto, which states with reasonable certainty,

" '(a)   each party to the contract either by his own name, or by such a description as will serve to identify him, or by the name or description of his agent, and

" '(b)   the land, goods or other subject-matter to which the contract relates, and

" '(c)   the terms and conditions of all the promises constituting the contract and by whom and to whom the promises are made.' "

The court next refers to the case of *Wertheimer* v. *Klinger Mills, Inc., supra.*

The court went further to say:

"The written contract presupposes a prior verbal agreement which it embodies. The writing is the evidence of the agreement, and not the essence of it. The memorandum, in

order to satisfy the Statute of Frauds, must contain all the essential stipulations and undertakings of the verbal bargain. If any of these stipulations are omitted, then the memorandum—although the parts which it does contain might, by themselves, make a complete contract—is not a note or memorandum of the agreement as required by the statute, and cannot be enforced at law or in equity. See Pomeroy on Specific Performance (1926), § 91, p. 225; *Butler University* v. *Weaver* (1932), 97 Ind. App. 151, and numerous cases cited on p. 155."

The court, in *Block,* in conclusion, sets forth the allegations of the complaint as to Mrs. Sherman's offer to sell certain real estate at a certain price at a certain down payment on a certain date and appellant was to assume taxes in the amount of $133.98, payable twice a year, and the balance of the purchase price to be paid in cash upon the delivery of the deed and the abstract brought up to date.

The court, speaking further, said:

". . . The signed receipt shows nothing concerning assumption of taxes, completion of abstract, or time of payment of balance of purchase price. While the time and place of performance are not always necessary terms of a valid memorandum, because in their absence the law supplies these by implication, but where a time for performance has been expressly agreed upon as a part of the contract, and thus made a condition, it must appear as a constituent part of the memorandum."

The court, speaking further, quoted from the case of *Berman Stores Co.* v. *Hirsh* (1925), 240 N. Y. 209, 148 N. E. 212, 213, wherein the court stated the rule as follows:

" 'If the parol agreement fixed no time for delivery the memorandum evidencing the contract is sufficient under the statute since it contains all the terms which have been agreed on. In such case the law supplies the missing term and requires delivery within a reasonable time. If, on the other hand, the time was fixed by the parties the memorandum is insufficient.

" ' "It is not sufficient that the note or memorandum may express the terms of a contract. It is essential that it should

completely evidence the contract which the parties made."
[Citing cases]' "

This court determined that the receipt did not completely evidence the contract the parties made and affirmed the judgment of the trial court which was, as heretofore stated, for the defendants after their demurrer to plaintiff's complaint was sustained.

The *Block* case is followed by a later case covering the same problem in this court, namely *ITT Cannon Elec., Inc.* v. *Brady* (1967), 141 Ind. App. 506, 511, 230 N. E. 2d 114.

In the case at bar the complaint did set out the terms of the sale on the real estate as hereinabove set out. After the auctioneer's hammer fell and he said the plaintiff-appellee owned the farm appellant Hubbard and his then wife, under the reservation, had time to reject the bid pursuant to the terms of the sale bill and the announcement of the auctioneer prior to the sale. There is much dispute as to whether or not adequate time was given to reject the bid and as to whether or not the bid was rejected. However, we are not confronted with that problem here.

The matter which we are called to pass upon is whether or not the memorandum made by the sale clerk after plaintiff-appellee's bid and the sale to him was sufficient to take this action for specific performance out of the statute of frauds.

We must reiterate that the sale bill and auctioneer's announcement before the commencement of the sale were "Terms—Cash on personal property; terms on real estate—10% down on day of sale, balance with deed within 30 days with the right to reject any and all bids. Possession with deed."

We have heretofore determined that the auctioneer and Sharon Walton, clerk for said auction on behalf of defendants, were agents of the sellers and of the buyer.

Sharon Walton, as such clerk, having the authority to bind both the parties, was charged in her employment with making

a memorandum of the sale of the real estate to the purchaser in compliance with the requirements of the statute of frauds.

The complaint alleges that defendants agreed to sell the farm at $20,000 and failed to reject said bid when they had the opportunity to do so, in accord with local custom regarding such auction sales; said sale was written by Sharon Walton, clerk of the auction on behalf of defendants; plaintiff paid 10% of the purchase price, to-wit, $2,000, to defendants which was accepted by James Lemmon, cashier of the auction on behalf of the defendants.

Plaintiff further alleged that he complied with the terms of the sale in that he sent by certified mail to the defendants within 30 days from the date of the sale a certified check in the amount of $6,000 and a building and loan commitment for a mortgage loan of $12,000 and further alleged that he had deposited the certified check, the loan commitment and the $2,000 check he had originally offered the cash clerk at the sale and tendered them into the clerk's office.

This court, in compliance with the law of the state following the statute of frauds now holds that the entry of the sale clerk, which stated "Farm—Twenty thousand dollars—Dick Whitham" was not sufficient to bind the sellers and was fatally defective for the reason that it did not state that 10% had been paid down on the day of the sale and did not further state the balance with deed within 30 days and did not state possession with deed.

Whether it was necessary to include in the memorandum the words "with the right to reject any and all bids" will not be passed upon by this court at this time as such may have been surplusage in the memorandum and the other defects are adequate to show that the memorandum did not completely evidence the contract the parties made.

For the above and foregoing reasons the judgment is reversed and this cause remanded to the trial court with instructions that the trial judge sustain the demurrer to plain-

tiff's complaint and for any other proceedings not inconsistent with this opinion.

Lybrook and Robertson, JJ., concur.

NOTE.—Reported in 279 N. E. 2d 232.